ADAMS & WESTLAKE CO. v. PETER GRAY & SONS, Inc.

(District Court, D. Massachusetts. July 2, 1913.)

No. 237 (C. C. 824).

1. PATENTS (§ 328*)—VALIDITY AND INFRINGEMENT—SIGNAL LAMP.

The Hamm patent, No. 651,782, for a signal lamp, covers specific improvements of construction, rather than any new principle of construction or operation, the efficiency of the lamp in respect to prevention of blowing out and prevention of sweating being due to its special form, and not to any conception of a new principle or of any generic feature of novelty; and while as a specific structure it discloses patentable novelty and invention, its claims must be limited to such structure. As so construed, *held* not infringed.

2. PATENTS (§ 170*)—CONSTRUCTION OF CLAIMS—IMPROVEMENT PATENTS.

When the improved result accomplished by a patented device is due to a more exact or refined application of old principles, care must be taken to limit the claims to those new features which give the better result.

[Ed. Note.—For other cases, see Patents, Cent. Dig. § 245; Dec. Dig. § 170.*]

In Equity. Suit by the Adams & Westlake Company against Peter Gray & Sons, Incorporated. On final hearing. Decree for defendant.

Gillson & Gillson, of Chicago, Ill., and Charles Allen Taber, of Boston, Mass., for complainant.

Richard P. Elliott, of Boston, Mass., for defendant.

BROWN, District Judge. The bill charges infringement of letters patent No. 651,782, June 12, 1900, to William S. Hamm, for improvement in signal lamps. Claims 1, 2, 5, and 6 are in suit.

"1. The combination, with a lantern, of an annular air-chamber depending thereinto remotely situated with reference to the burner and communicating with the combustion-chamber thereof, the said annular chamber comprising an inner imperforate and an outer perforated air-distributing wall, and being closed at its lower end and provided with air-inlet openings communicating with the external air, and the central passage of the annular air-chamber constituting an escape-flue for the products of combustion, substantially as set forth.

"2. The combination, in a lamp or lantern, of a casing or body having a series of openings for the admission of air, a perforated cylinder within the casing or body and secured thereto below the openings, and a cone attached to the perforated cylinder and passing through it and the top of the casing or body, substantially as set forth."

"5. The combination, in a lamp or lantern, of a casing or body, a plate in the upper part of said casing or body, an internal cone extending above and below the said plate, a perforated cylinder connected to the base of the said internal cone, an outer cone above said plate, surrounding the internal cone, and extending above the same, said outer cone being open at the top, and a cap above said outer cone, the casing or body being provided, immediately below said plate, with openings, substantially as set forth.

"6. The combination, in a lamp or lantern, of a casing or body, and an air-chamber in its upper part consisting of the plate 3, cylinder 8 and cone 10, said chamber extending into the casing or body and having a series of openings for the admission of air from without, and perforations for the exit of air into the casing or body, said air-chamber constituting means for deflect-

ing and quieting the currents of air before they pass into the lantern, substantially as set forth."

The specification states that the invention relates particularly to signal lamps such as are employed in connection with railway switches, although applicable to other lamps used in railway practice and for a variety of purposes. The lamp is intended for use in the open air, and for exposure to various temperatures.

[1] One of the objects of the invention is to prevent "sweating," and thus preserve an unobstructed and brilliant light. A further object is to prevent the downward rush of air either under the top cap or through the openings provided to admit fresh air for combustion, tending to extinguish the flame. A further object is to prevent the choking up of the hot-air outlet by the heavier cold air or otherwise, which also has a tendency to extinguish or smother the flame or render it less brilliant.

The patentee states that the lamp body is preferably made of Bessemer steel, of the general character set forth in his patent No. 549,314, November 5, 1895. This shows a cone (marked "10") arranged within the upper portion or section 2 of the lantern casing. In the present invention a similar cone is employed, but the upper portion of the outer casing is differently shaped and the openings therein are differently placed. The base of the cone is also carried down into the body of the lantern. The patentee says:

"The sweating of the lenses is prevented by the increased volume of cold air which enters the lantern through the perforations in the cylinder 8, thus insuring (as nearly as possible) an even temperature on the inner and outer surfaces of the lamp body and in the lenses, which can only be secured by keeping a sufficient volume of cold air the temperature of which is substantially that of the outer air between the inner surface of the lamp-body and the central current of hot air from the burner."

"To obtain the necessary quantity of cold air within the lantern, it has been found necessary to carry the base of the cone 10 into the lantern. This, however, is not objectionable, as it is apparent that within certain limits the nearer the base of the cone 10 is to the flame the more quickly will the hot air pass through the cone and out of the lamp under the cap 1. This rapid movement of the hot air will carry the whole of it out of the lamp, leaving none to mingle with the incoming cold air, and at the same time it will effectually prevent the cold air from passing down through the cone into the lamp, which would extinguish the flame or cause it to flicker and reduce the power of the light."

In the prior patented art is also the patent to Hamm, No. 592,705, October 26, 1897, in which reference is made to "sweating"; the patentee saying:

"I have overcome this defect by constructing a lantern having a top-air admission, the air descending within the globe and to a certain extent in contact therewith to the bottom of the globe and thence to the flame. Thus a current of air of the same temperature as that of the globe (which is that of the exterior air) is always in contact therewith, any deposition of moisture thereon being prevented," etc.

The prior patent to Bourne, No. 569,572, October 13, 1896, shows a top-air admission, and it is said:

"Such air descends within the globe close to the inner wall thereof, and being cool and descending rapidly protects the globe from the condensation of such vapors as are not carried off completely through the ventilator," etc.

Bourne also says:

"One cause of the low efficiency of a lamp or gas flame as compared with the theoretical results which should be obtained from the use of a given quantity, of an illuminant of standard quality is the failure to remove immediately and completely the products of combustion, which, especially in lanterns, are returned sometimes and to some extent to the point of combustion, thereby interfering with the proper supply of oxygen and occasioning imperfect combustion. Another cause, not only of low efficiency, but also of the frequent extinguishment of the flame altogether in any structure, whether it be a lamp or a lantern or a room in which there is a ventilating-opening above the flame, is the back draft which is sometimes established. especially in the case of lanterns which are exposed to currents of air. It is the object of my invention, primarily, to remove both of these causes of trouble by effecting the immediate removal of the products of combustion and by preventing the possibility of back drafts. Incidentally to the attainment of these main objects I promote the supply of oxygen to the flame, so that the combustion shall be of the proper character and a maximum of light obtained, prevent the accumulation of the products of combustion in the globe of a lantern or lamp, and consequently the deposit of watery and other vapors on the inside of the globe, which has hitherto been a serious difficulty, especially in the use of railroad, marine, and other signal lamps or lanterns in cold weather."

A similar direction of the air current is described in the patent to Miller, No. 439,672, November 4, 1890:

"The cool incoming air is drawn close to the glass, so that the temperature of the globe is kept down," etc.

It does not appear, however, that Miller was specially concerned with the problem of preventing sweating, but rather with preventing disturbance of the flame by violent blasts or strong currents of air, and with regulating the draft of incoming air and directing the current of air to the sides of the globe, in order to keep the temperature of the glass low.

The patent to Richardson, No. 72,542, December 24, 1867, and to Thomas, No. 402,204, April 30, 1889, have also been brought to the attention of the court.

It is apparent that at the date of the invention of the Hamm patent in suit there was no novelty in the expedient for guarding against sweating, which consists in introducing air at the top of the lantern into an annular air-chamber surrounding a central draft-tube through which the products of combustion escape, and delivering the air from the said annular air-chamber adjacent to the upper part of the inner surface of the wall or body of the lantern, so that the freshly admitted air may flow down the inner surface of the lantern body. The statement of defendant's expert to that effect seems fully justified.

Furthermore, the necessity of removing the products of combustion was obvious and had been expressly referred to in the Bourne patent, in language which has been above quoted.

It is conceded by the complainant that the patent does not state a correct scientific theory of the cause of sweating in lamps. The complainant's brief states:

"While it is true that Hamm did not have a scientifically correct theory as to the cause of the sweating in lamps, supposing it to be caused by the condensation of moisture carried in by the air, when in fact it arises from

the condensation of water vapor generated directly by the combustion, nevertheless he did provide an adequate remedy. That there was moisture within the lamp body, which became condensed upon its walls when the ascending vapors mixed with the incoming air, he knew, and his invention in part consisted in means for successfully preventing this admixture."

Also:

"It matters not that he thought it necessary to keep the walls cool, while in fact the thing to be accomplished was to prevent the vapors" (i. e., from combustion) "from being cooled by contact with the walls."

Complainant's expert Crew says on rebuttal:

"In order to separate these two bodies, the ascending column of water vapor and the glass wall, we might use a glass chimney, and this has sometimes been done; but the simpler and superior method is to introduce the air which is needed for combustion in such a way that it will flow in a steady, uniform, continuous, well-distributed stream of 'dry' air between the wall of the combustion-chamber and the column of ascending products.".

Apparently, then, the devices of the prior art involved the same principle of separating the glass and products of combustion by means of a sheet of air enveloping the globe. It is urged, however, that in the lamp of the Hamm patent there is also a region of dead air, between the descending curtain of air and the ascending products of combustion, a region of air whose motion is insignificant compared with the steady flow of dry air over the lens or the ascending flow of combustion products, and that this is secured by a depending cylinder, extending some distance below the point at which fresh air is admitted to the combustion-chamber, combined with a horizontal velocity of the air as it is being admitted to the combustion-chamber.

It is said to be characteristic of complainant's device that the air which issues from the air-chamber is quite widely separated from the nearest of the escaping products of combustion, and that the function of the lower portion of the conical structure is to make such separation. The specification states:

"The lower end of the cylinder 8 being imperforate, the entering air current pours directly into the lamp when deflected downward by the plate 3."

After considering the complainant's contention, I am of the opinion that the features of directing the incoming air to the sides of the glass, thus separating by a curtain of air the glass and the ascending products of combustion, and also the separating of the incoming current of air from the ascending products of combustion by a depending cylinder, were features of the prior art.

It was, of course, fundamental to guard against gusts that might enter the globe or combustion-chamber, either from the air-inlets or from the chimney or outlet for products of combustion, and extinguish the flame. So far as this feature is concerned, it may be said that the testimony that the complainant's lamp does not blow out shows merely that the entrance and exit are better guarded than other devices, and upon this question the devices of the complainant and defendant are to be compared with reference to the special structures, rather than to any novelty in principle. Upon this question, also, the patent to Thomas, No. 402,204, April 30, 1889, and the patent to Miller, No.

439,672, seem to have special relevancy, though apparently these patents are not concerned directly with the problem of sweating.

Giving due weight to the evidence as to the efficiency of the complainant's device, in respect to the prevention of blowing out the flame and, the prevention of sweating, this appears to be due to its special form, rather than to any conception of a new principle, or of any generic feature of novelty.

The unpatented art, which includes the Watts tail marker lamp, the Bessemer steel switch lamp, the Bessemer steel switch lamp with flat open cap, and the masthead lamp, as well as the patented art, shows that the success of the lamp of the patent in suit is due to specific improvements of construction, rather than to any new principle of operation or construction. The differences are in degree rather than in kind.

The fact that the defendant has succeeded in attaining results similar to those attained by the patentee in a case of this kind is a very slight indication of infringement.

[2]. When the improved result is due to a more exact or refined application of old principles, care must be taken to limit the claims to those new features which give the better result; otherwise one who has made what is perhaps the best application of old principles may lay too broad a claim to the use of that which other improvers are also at liberty to apply.

Much stress is laid by complainant upon the argument that the patentee produced a new result. This is somewhat misleading. It is not broadly new, as we have seen, to control the force of the wind by air-chambers which quiet the gusts, to direct the air-current to the wall of the lamp, and to so separate the entrance and exit that the vapors shall not mingle. Better results of this kind are not such results as lead to the inference of any new mode of operation. To do the old thing better does not necessarily involve patentable novelty.

The complainant's supplemental brief cites many authorities upon the question of invention. It may be conceded, however, that the lamp of the patent in suit as a specific structure involves patentable novelty. The difficulty in the present case is in finding any new principle of operation, or a result new in kind, as distinguished from an improved result, due to a better and more careful application of old principles.

The complainant's contention, that if a device gives a new result it is immaterial that the inventor may have had an erroneous theory of operation, is fully recognized in Combustion Utilities Corp. v. Worcester Gaslight Co. (C. C.) 190 Fed. 155, 159, which presents questions somewhat analogous to those in this case.

The expression "new result" is not exact. The kind or degree of improvement may be so great as to justify the expression, or of such character that we may call it a mere improvement in result—not new, but better. The case cited seems to me to illustrate a case on one side of the line, and the present case to fall on the other side of the line. The difficulty of drawing such a line, and making a judgment upon a question of this character, is fully recognized. I am of the opinion,

however, that in the present case the burden rests upon the complainant to show that there is involved in the device of the patent in suit some new mode of operation or some novelty in principle or in application of principle, in order to invoke the doctrine of equivalents to such an extent as to bring the defendant's device within the claims.

From the testimony of the complainant's witnesses as to a "balanced draft," it seems quite probable that the efficiency of complainant's lamp depends largely upon proportions and adjustments not referred to in the patent, and not claimed. In view of the prior patents to Hamm, and of the prior patented and unpatented art, I am of the opinion that the claims of the present Hamm patent in suit must be regarded as for specific structures operating upon general principles which are open to other inventors to apply; that the claims in suit are each and all limited to specific constructions substantially like those shown; and that, so limited, they are not infringed.

In reaching this conclusion I by no means desire to depreciate the value of the improvements made by Mr. Hamm in the practical art. It must be remembered, however, that what he had disclosed, both of structure and of principle, in his prior patents, cannot be protected under the present patent, and that so far as this patent is concerned others are entitled equally with himself to profit by his experiments and to improve upon his disclosures, which form part of the prior art.

The defendant's air-chamber has features which resemble the air-chamber of Watts more closely than Hamm's. Watts has a single row of perforations disposed horizontally, the defendant a double row disposed horizontally, the air-discharge being downward in both, while Hamm, in his patent No. 592,705, had a single row of vertically disposed perforations, and in the patent in suit a vertical perforated screen. Defendant has a depending part, but this does not have the function of discharging the air laterally against the wall of the globe. It also serves to better perform a function not referred to in the patent in suit, but to some extent involved in Hamm's structure—the separation of the inlet and the outlet.

These differences are not merely colorable evasions, but considered as structures defendant's lamps may be regarded as new combinations, borrowing both from Hamm's prior patents and from other inventors of the prior art.

I am of the opinion that the claims in suit are valid, but in view of the prior art are so limited that they are not infringed.

The bill will be dismissed.